This was a Case adjourned by the Superior Court of haw of Alleghany county. The Case itself is fully set forth in the following opinion of the General Court, delivered by
BARBOUR, J.
This is an adjourned Case from the Superior Court of ¡jaw for the county of Alle-ghany. It was an Information filed against Callaghan and Holloway, two of the Justices of Alleghany, alleging in substance the following charge: that at a Court held for the county of Alleghany, there was an election for the office of Commissioner of the Revenue, and of Clerk of said *Court, when the Defendants were both present, and acting in their official character as Magistrates, in voting in said election; that the Defendant Callaghan, in said election for Commissioner of the Revenue, wickedly and corruptly agreed to vote, and, in pursuance of said corrupt agreement, did vote for a certain W. G. Holloway, tobe said Commissioner, in consideration of the promise of the Defendant Holloway, that he would vote for a certain Oliver Callaghan to be Clerk of said Court; and that the Defendant Holloway in the said election of Clerk, wickedly and corruptly agreed to vote, and in pursuance of said corrupt agreement, did vote for a certain Oliver Callaghan to be said Clerk, in consideration of the promise of the Defendant Callaghan, that he would vote for the aforesaid W. G. Holloway, to be Commissioner. To this Information, the Defendants demurred generally, and there was a joinder in the demurrer. The Superior Court of Law of Alleghany, with the assent of the Defendants, adjourned for novelty and difficulty, to this Court, the question of Law arising upon the demurrer to the Information, and particularly the following, viz:
1. Is there any offence stated in said Information, for which an Information or Indictment will lie?
2. Is the offence charged in the said Information, within the true intent and meaning of the Act of the General Assembly, entitled “An Act, against buying and selling offices,” passed October 19th 1792, in page 559, 1st vol. Rev. Code of 1819?
3. If the offence be within the said Act, is the Information filed in this Case, a good and sufficient Information?
The first and second questions, for the sake of convenience, will be considered together.
It is proper to premise, that a general demurrer admits the truth of all facts which are well pleaded; there being such a demurrer in this case, and the Information distinctly alleging that the Defendants, in giving their votes respectively, acted wickedly and corruptly, such wicked and corrupt motive will be considered throughout, as forming a part of the Case.
The Court are unanimously of opinion, that the Case as stated in the Information, is not within the true intent and meaning of the Act of Assembly, referred to in the second question. That Act embraces two descriptions of Cases, 1. The sale of an office, or the deputation of an office; *2. The giving a vote in appointing to an office, or the deputation of office. It would be within the latter description that this Case would fall, if within either; but the Court are decidedly of opinion, that this Case does not fall within this description, because the plain construction of the Statute is, that the penalties which it denounces, are incurred Í only by those, who receive or take, either *312 directly or indirectly, any mone}, profit, &c. or the promise to have any money, profit, &c., to their own use, or for their own benefit. In this case, it appears from the Information, that the promise of each of the Defendants to the other, which constituted the consideration of the vote of that other, and the vote given in consequence of such promise, enured, not to the benefit of the Defendants or either of them, but to the benefit of others. If indeed, it had been atleged in the Information, that the persons for whom the votes were given, were, if elected, to have held them, upon any agreement, that the Defendants should, in any degree, participate in their profits, or receive from the holders of them, any benefit or advantage, the case would have been different, for then the Defendants would have received a profit indirectly, and thus would have fallen within the Statute; but, there is no such allegation.
The Court being thus of opinion, that this Case was not embraced by the Statute: but at the same time considering, that that system of Criminal Jurisprudence, must be essentially defective, which had provided no punishment for acts such as are charged in the Information, and which merit the reprehension of all good men, were led to enquire, whether the acts charged in the Information, did not constitute an offence at Common Daw; and they are of opinion, that they do.
In relation to those offences which rise to the grade of Felony, there is usually, particularly in the designation of them by name, an accuracy in the definition; as for example, Murder, Burglary, Arson, &c. in each of which, the term ex vi termini, imports the constituent of the of-fence; but in the general classification of crimes, whatever is not Felony, is Misdemeanor. In relation to these, then, they are not only numerous, but indefinitely diversified, comprehending every act which, whilst it falls below the grade of felony, is either the omission of something commanded, or the commission of something prohibited by Daw. As to these, the Daw can do no more than lay down general principles; *and it belongs to the Courts of the country, to apply those principles to the particular cases as they occur, and to decide whether they are,- or are not, embraced by them. Thus the Daw, as a general proposition, prohibits the doing of any act, which is contra bonos mores. The particular acts which come up to this description, it is impossible to include in any precise enumeration ; they must be decided as they occur, by applying this principle to them as a standard. Thus again, it is now established as a principle, that the incitement' to commit a crime, is itself criminal, under some circumstances. 6 Fast, 464; 2 Bast, S. As for example, the mere attempt to stifle evidence, though the persuasion should not succeed. Cases of this kind may be as various, as the varying combinations of circumstances.
To come more immediately to the present Case, we hold it to be a sound doctrine, that the acceptance of every office, implies the tacit agreement on the part of the incumbent, that he will execute its duties with diligence and fidelity. 5 Bac. Abr. 210, Offices and Officers Bet. M. We hold it to be an equally sound doctrine, that all officers are punishable for corruption and oppressive proceedings, according to the nature and heinousness of the offence, either by Indictment, Attachment, Action at the suit of the party grieved, loss of their offices, &c. 5 Bac. Abr. 212, Better KT.
And further, that all wilful breaches of the duty of an office, are forfeitures of it, and also punishable by fine, (Co. Ditt. 233, 234,) because every Office is instituted, not for the sake of the officer, but for the good of another or others: and therefore, he who neglects or refuses to answer the end for which his office was ordained, should give way to others, and be punished for his neglect or oppressive execution.
Bet us apply these principles to the present Case. The Defendants were Justices of the Peace, and as such, held an office of high trust and confidence: In that character, they were called upon to vote for others, for offices, also implying trust and confidence: Their duty required them to vote in reference only to the merit and qualifications of the officers; and yet upon the pleadings in this Case, it appears, that they wickedly and corruptly violated their duty, and betrayed the confidence reposed in them, by voting under the influence of a corrupt bargain, or reciprocal promise, by which they had come under a ^reciprocal obligation to vote respectively for a particular person, no matter how inferior the qualifications to their competitors. It would seem, then, upon these general principles, that the offence in the Information is indictable at Common Daw. But, there are authorities which apply particularly to the case of Justices. In í Bl. Com. 354, n. 17, Christian; it is said, if a Magistrate abuse his authority from corrupt motives, he is punishable criminally by Indictment or Information.
Again, where Magistrates have acted partially, maliciously or corruptly, they are liable to an Indictment. 1 Term Rep. 692; 1 Burr.' 556; 3 Burr. 1317, 1716, 1786; 1 Wils. 7. An instance of their acting partially, is that of their refusing a license from motives of partiality, the form of the Indictment for which is given in 2 Chitty’s Crim. Daw, 253.
We are then of opinion, for the reasons, and upon the authorities aforesaid, that the offence stated in the Information, is a misdemeanor at Common Daw, for which an Information will lie, but that it is not within the Statute referred to.
In answer to the 3d question, we are of opinion, that the Information is a good and sufficient one.
All which is ordered to be certified to the Superior Court of Daw for Alleghany count}'.